FILED

99 DEC 15 AM 9:51

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

LIFE DATA LABS, INC.,

    PLAINTIFF,

v.                                                      CASE NO.: CV-99-J-2663-NW

FARNAM COMPANIES, INC.,

    DEFENDANT.

**ENTERED**

DEC 1 5 1999

## MEMORANDUM OPINION

This case came on to be heard on the plaintiff's motion for preliminary injunction

(doc. 5) on the court's motion docket of December 2, 1999. Both parties were present by and

through their counsel of record and the court heard oral argument on said motion. The court

has considered said motion, the arguments of the parties as well as the voluminous pleadings,

oppositions and evidence filed by the parties in support of and against said injunction.

### Factual Background

The plaintiff is an Alabama corporation which produces veterinary health products,

including a horse feed supplement which allegedly improves the health of horses' hooves.

The plaintiff has marketed this supplement under the name Farrier's Formula since 1985.

The plaintiff owns trademark Registration No. 2,263,856, registered July 27, 1999, for

Farrier's Formula. Exhibit A to plaintiff's complaint; declaration of Dr. Frank Gravlee at ¶

15.

29

The defendant, a New York company, has participated in the horse care industry since 1946 and produces numerous products for horse health care. Defendant's memorandum at 6. The defendant also sells a horse feed supplement which allegedly improves the health of horses hooves which has been marketed under the name H.B.15 since 1985. Defendant's memorandum at 7. The defendant alleges that in 1997, its employee, Dr. Colleen Wilson, developed a nutritional supplement to promote healthy hoof growth.[1]   Defendant's memorandum at 7; declaration of Blomquist ¶ 5.

In late 1998, the defendant inquired as to whether the plaintiff was interested in selling its business to defendant.[2]  Declaration of Dr. Gravlee at ¶ 17 and attachment I thereto; declaration of Rick Blomquist at ¶ 4. The plaintiff declined this offer. Declaration of Dr. Gravlee at ¶ 17; declaration of Rick Blomquist at ¶ 4. The plaintiff alleges that on or about the beginning of September, 1999, the defendant began advertising and soliciting orders for a new feed supplement called Farrier's Finest, also for horse hoof health, that is intended to compete directly with Farrier's Formula.[3]  Complaint at ¶ 13; declaration of Dr. Gravlee at

---

[1]Defendant's witnesses gave different testimony as to when this product was actually developed. Compare declaration of Blomquist at ¶ 5 ("early 1997") to declaration of Harrison at ¶ 5 ("late 1997").

[2] *See* declaration of Blomquist at ¶ 2 ("I decided it might be mutually beneficial for Farnam to explore the possibility of acquiring Life Data"). The court notes that "mutually beneficial" generally suggests that at least two parties will benefit, yet here, Blomquist identifies only Farnam as benefitting from such an acquisition.

[3]The court notes that "finest" is the superlative form of "fine", which is defined as "of superior quality, skill or appearance." Webster's II New Riverside University Dictionary, 1984 (Houghton Mifflin).

¶ 19. The plaintiff alleges that the defendant's chosen name sounds "like an improvement over Farrier's Formula." Plaintiff's memorandum at 1. The advertisements contain direct comparisons of the two products, which the plaintiff alleges include false and misleading statements. Complaint at ¶ 13. The plaintiff states that the advertizing in question was intentionally designed to be false and misleading. Complaint at ¶ 14. Furthermore, the plaintiff states that the defendant's claims that its product has been proven through nutritional studies are false and that no such studies exist. Plaintiff's memorandum at 2. By declaration, Barry Harrison explains that Dr. Wilson actually analyzed already existing nutritional studies, but did not conduct any of her own. Harrison declaration at ¶16; Declaration of Dr. Colleen Wilson at ¶ 8.

The defendant alleges that in marketing Dr. Wilson's nutritional supplement, it determined through marketing surveys that "it would be important to use the word 'farrier' in describing the product...." Defendant's memorandum at 7. The defendant also alleges that many businesses who sell hoof supplements and hoof related products use the word "farrier" in describing such products."[4] *Id.* at 7-8. Furthermore, the president of defendant's Horse Division states by declaration that "[t]he decision ... was made to compete directly with Life Data's Farrier's Formula and other competing horse hoof feed supplements .... Farnam's objective in creating the comparison chart advertisements was to compare and

---

[4]However, defendant also alleges that it reviewed relevant marks on the U.S. Patent and Trademark database and determined that, at the time of the search, the plaintiff did not have a federal registration for its mark. Defendant's memorandum at 8 and declaration of Harrison at ¶ 13(b).

contrast it to Life Data's product, rather than to confuse the two products." Blomquist declaration at ¶ 6. Mr. Blomquist also states that "Farnam simply came to the decision that, since it could not acquire Life Data's product lines or another comparable feed supplement product, Farnam would take advantage of past research and formulation work done by Dr. Wilson and introduce a high quality, competing food supplement...." Id. at ¶ 7.

The plaintiff also alleges that the advertising and the name has caused actual confusion among consumers between the two products. Complaint at ¶ 14. The plaintiff states that the defendant chose the Farrier's Finest mark to trade on the goodwill of the plaintiff's product and to create an impression that the defendant's product is associated with the plaintiffs. Complaint at ¶ 16. The plaintiff's expert submitted a declaration stating that the plaintiff's product is considered the "gold standard" to which all other similar products are compared. Declaration of Dr. Doug Butler, submitted as plaintiff's exhibit 5.

The plaintiff brings claims under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, for federal unfair competition, federal trademark infringement and federal anti-dilution as well as state law claims for unfair competition, intentional interference with business relations and state law anti-dilution.

The defendant filed a counterclaim for declaratory judgment and cancellation of the plaintiff's trademark. Counterclaim at ¶ 3. Defendant alleges that it is marketing its horse hoof supplement under the trade name "Farnam" and that this supplement is intended for use by farriers. Counterclaim at ¶ 10-11. The defendant states further that after it began

4

marketing this product, the plaintiff alleged that defendant's use of Farrier's Finest infringed on the plaintiff's trademark in Farrier's Formula.  Defendant also alleges that the plaintiff's product is "a formula used by farriers to treat horses with hoof problems and to facilitate fitting such horses with shoes."  Counterclaim at ¶ 17.

Defendant requests this court enter a declaratory judgment finding that it has the right to use the term "Farrier's Finest" and that plaintiff has abandoned any rights is had in the term "Farrier's Formula.  Counterclaim at ¶¶ 26, 35.  Defendant also requests that this court cancel plaintiff's trademark registration as improperly issued, pursuant to 15 U.S.C. §§ 1119 and 1120.  The defendant further alleges that it has suffered irreparable injury from plaintiff's false and fraudulent registration of the term "Farrier's Formula."

### The plaintiff's preliminary injunction motion

The founder of plaintiff's business, Dr. Frank Gravlee, states by declaration that his veterinary practice, since 1973, has focused on the nutritional needs of individual horses based on blood chemistry.  Declaration of Dr. Gravlee at ¶ 3.  He stated further that he compiled significant research data which has guided his equine nutritional work.  *Id.*  Based on this research, in 1979 he created the first hoof oriented feed supplement for sale in the United States, which he began marketing under the name "Farrier's Formula in 1985. *Id.* at ¶ 6.  Independent research has shown that the plaintiff's product improves hoof growth. *Id.* at ¶ 7; attachments B and G to declaration of Dr. Gravlee. The plaintiff's product is the leading dietary supplement for hoof horn improvement and Dr. Gravlee's work in developing

5

it led to his election to the American Farrier's Journal International Equine Veterinarians' Hall of Fame.  Declaration of Dr. Gravlee at ¶ 9 and attachment D thereto.

Plaintiff's product was identified in 1998 as the top-selling product of its kind in the United States for the past seven years.  Declaration of Dr. Gravlee at ¶ 10.  In its exhibits in support of its motion for preliminary injunction, the plaintiff submitted documents of the defendant which clearly demonstrate that the defendant was not merely entering the market for horse hoof supplements, but intentionally going after the plaintiff's business.[5]  The defendant alleges that it did not believe that any confusion would result between its product and the plaintiff's on the basis "that company obviously did not have exclusive rights in the words 'Farrier's' or 'Formula'" and that "there were notable differences between that term and 'Farnham's Finest.'"[6]  Defendant's memorandum at 9.

Before a preliminary injunction may issue, the plaintiff must show that evidence establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the

---

[5]For example, defendant's internal documents contain statements such as "[t]he clear category leader is Life Data Laboratories with its leading product, Farrier's Formula ...." plaintiff's supplemental exhibit 11, at 2, "[t]his hoof supplement is designed to beat Farrier's Formula in a side-by-side comparison.  This is important to consumers...." Id. at 3.  "We will do a direct comparison to Farrier's Formula which will compare and contrast the product attributes that are important to the consumer based on the research."  Id.  "Target market: Farrier's Formula current and potential customers ...."  Id.  "Farrier's Formula is the market leader, and they promote the idea of a more complete hoof supplement .... They give the perception that they are very scientific, and refer to '25 years of research in their labs.'" Id. at 7.

[6]The court notes that the plaintiff has been given exclusive rights to use "Farrier's Finest" on a horse feed supplement by the U.S. Patent and trademark office and that the defendant has submitted no evidence that it ever even intended to call its product "Farnham's Finest."  As such, its claim to lack of belief that confusion would result is quite dubious.

plaintiff outweighs the harm the injunction may cause the defendant; and (4) that granting the injunction would not deserve the public interest. *Levi Strauss & Co. v. Sunrise International Trading, Inc.*, 51 F.3d 982, 985 (11th Cir.1995); citing *Church v. City of Huntsville*, 30 F.3d 1332, 1341-42 (11th Cir.1994). Each of these elements constitutes a factual showing that the plaintiff must meet. *Northeastern Fla. Chapter Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990); *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 909 F.2d 480, 483 (11th Cir.1990). At the preliminary injunction stage, this court may rely on affidavits and hearsay materials which would not be admissible for a permanent injucntion, if the evidence is "appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss*, 51 F.3d at 985; citing *Asseo v. Pan American Grain Company*, 805 F.2d 23, 26 (1st Cir.1986).

### Success on the Merits

Under the Lanham Act, the use of a registered mark in connection with the sale of goods when such use is likely to cause confusion, create mistake or deceive, is prohibited. 15 U.S.C. § 1114. To prevail on its trademark infringement claim, the plaintiff must establish that (1) its mark has priority and (2) the defendant's mark is likely to cause confusion. *Carnival Brand Seafood v. Carnival Brand*, 187 F.3d 1307, 1309 (11th Cir.1999). To determine the likelihood of confusion, the Eleventh Circuit uses a seven factor test: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods; (4) the identity of customers; (5) similarity of advertising; (6) the good or bad intent of defendant

7

and (7) evidence of actual confusion. *Carnival*, 187 F.3d at 1311-1312, citing *Tally-Ho, Inc. v. Coast Community College*, 889 F.2d 1018, 1027 (11th Cir.1989).

While the defendant argues that the plaintiff's mark is generic and therefore entitled to no protection, this court disagrees. The plaintiff began marketing its product in 1985 under the name Farrier's Formula. Declaration of Dr. Gravlee at ¶ 6. The defendant began marketing its product in September, 1999 under the name Farrier's Finest. Clearly, the plaintiff's mark had priority. As to the question of the likelihood of confusion, this court finds that the mark Farrier's Formula is more than merely generic.

In examining the type of mark at issue here, this court has used the five prong test for dilution of a trademark drawn from 15 U.S.C. § 1125(c) and recently restated by the Second Circuit: (1) the senior mark must be famous; (2) the senior mark must be distinctive; (3) the junior use must be a commercial use in commerce; (4) the junior use must begin after the senior mark has become famous and (5) the junior mark must cause dilution of the senior mark.[7] *Nabisco v. PF Brands, Inc.*, 191 F.3d 208, 215 (2nd Cir.1999). *See also Carnival Corp. v. Seaescape Casino Cruises*, -- F.Supp. --, 1999 WL 1023121, at 7 (S.D.Fla.) ("To

---

[7]As the Eleventh Circuit explained in *Tally-Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018 (11th Cir.1989), an infringement action is based on the likelihood of consumer confusion between suppliers of competing goods in the same geographic area. *Id.* at 1024. A dilution action, in contrast, is based on the concept that a strong trademark has value beyond its ability to distinguish a good or service's source. *Id.* A dilution action protects the owners of such strong, distinctive marks from the diminution of consumer goodwill by competitors or non-competitors. *Id.*" *Carnival Corp. v. Seaescape Casino Cruises* 1999 WL 1023121, at 7 (S.D.Fla.). The plaintiff here makes both types of claims. Although the two claims have separate elements of proof, the court notes that at the preliminary injunction stage, if the plaintiff provides strong evidence of likelihood of success on the merits for either claim, the requested injunction should issue.

prove a dilution claim, a plaintiff must provide sufficient evidence that 1) its mark is famous; 2) the defendant adopted its mark after the plaintiff's mark became famous; 3) the defendant's mark diluted the plaintiff's mark; and 4) the defendant's use is commercial and in commerce"); citing *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 1999 WL 707786 (7th Cir. Sept. 13, 1999); *Avery Dennison Corp. v. Sumpton*, 1999 WL 635767 (9th Cir. Aug. 23, 1999); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 452 (4th Cir.1999), *cert. denied*, 1999 WL 412763 (U.S. Oct.4, 1999).

The *Nabisco* court defined "distinctive" as an element of dilution as follows:

> At the low end are generic words – words that name the species or object to which the mark applies. These are totally without distinctiveness and are ineligible for protection as marks because to give them protection would be to deprive competitors of the right to refer to their products by name (citations omitted). Thus no one can claim the exclusive right to use the mark "CAR" for a car. One rung up the ladder are "descriptive" marks – those that describe the product or its attributes or claims. These also have little distinctiveness and accordingly are ineligible for protection unless they have acquired "secondary meaning" – that is, unless the consuming public has come to associate the mark with the products or services of its user (citation omitted). The next higher rung belongs to "suggestive" marks: these fall in an in between category.... They do not name or describe the product for which they are used, but they suggest qualities or claims of that product. They are more distinctive that descriptive marks, and thus are accorded trademark rights without need to demonstrate that consumers have come to associate them with the user of the mark.... Nonetheless, because they seek to suggest qualities of the product, they possess a low level of distinctiveness. They are given less protection than is reserved for more distinctive marks – those that are "arbitrary" or "fanciful." A mark is arbitrary or fanciful if there is no logical relationship whatsoever between the mark and the product on which it is used....

*Nabisc*o, 191 F.3d at 215-216.

This court finds that the common definition of a "farrier" is "a person who shoes horses." *Merriam Webster's Collegiate Dictionary*, 10th ed., 1998. *See also Webster's II New Riverside University Dictionary*, 1984 (Houghton Mifflin) (one "that shoes horses or treats them medically"). This court finds that defendant's argument that "farrier" as applied to this particular product is a generic term to be incorrect. Defendant's memorandum at 19. A generic term names the genus or class of which an individual article or service is but a member. *Dieter v. B & H Indus. Of Southwest Fla.*, 880 F.2d 322, 327 (11th Cir.1989). This court finds that a horse feed supplement, regardless of the intended benefit it claims to provide, is not a "member" of a class of farrier products.[8] Furthermore, a federal registration constitutes a strong presumption that the term is not generic. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:12 (4th Ed. 1999).

The court finds this mark to be either a descriptive one which has acquired secondary meaning or a suggestive one, as the term "Farrier's Formula" connotes that this is a product the farrier would recommend as a feed supplement, if asked.[9] A suggestive term is one that

---

[8]As such, the court discounts the defendant's repeated representation that this is a product used by a farrier in the shoeing of horses. *See, e.g.*, defendant's memorandum at 21. Rather, the plaintiff's product and chosen name thereof are more descriptive or suggestive. The court finds useful an analogy such as a blood pressure medication, available over the counter, called "Nurses' Favorite." The name implies that a nurse would recommend this product, but in no way could a person find that "Nurses' Favorite" would be used in the taking of blood pressure measurements or that this was a generic term for a product that was supposed to lower blood pressure.

[9]The defendant argues that the plaintiff must show that the primary significance of the term "Farrier's Formula" in the minds of the consuming public is not the product but the producer. Defendant's memorandum at 21, citing *Vision Center v. Opticks*, 596 F.2d 111, 115 (5th Cir. 1979). This court finds that the defendant's own documents and the marketing documents of defendant's submitted by plaintiff establish this. Additionally, the ensuing confusion of the products and the public's belief that Farrier's Finest is a new and improved

requires an effort of the imagination by the consumer in order to be understood as descriptive. *American Television v. American Communications*, 810 F.2d 1546, 1549 (11th Cir. 1987).

Defendant's allegation that this is "a formula used by farriers to treat horses with hoof problems and to facilitate fitting such horses with shoes," counterclaim at ¶ 17, defendant's memorandum at 20, simply is not compatible with the reality of the product, which is a horse feed supplement. Defendant argues that the term "farrier" is naturally associated with plaintiff's product and as such the strength of the mark is weak. Defendant's memorandum at 24. However, this court finds no such natural association.[10] Furthermore, the defendant's attempt to split the plaintiff's trademark into its individual parts and decry each word therein as generic is misleading. Clearly, the court must examine the mark in its entirety. *See Committee for Idaho's High Dessert v. Yost*, 92 F.3d 814, 821 (9th Cir. 1996); *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 692 (5th Cir. 1992). The court finds the defendant's claims otherwise to be ludicrous.

---

version of Farrier's Formula also support a finding that the public associates Farrier's Formula with Life Data Labs. *See infra*, discussion of confusion.

[10]Contrast Farrier's Formula with, i.e. Hoof Strengthening Formula, or Strong Foot Formula. The defendant's argument requires a mental leap from "hoof" to "farrier" and from "farrier" to "healthy hooves" and from there to "dietary supplement to aid in healthy hooves." This court is unable to make such a drastic jump from farrier to "dietary supplement to aid in healthy hooves."

The two marks are quite similar and are being applied to very similar products.[11] Additionally, the defendant is marketing its product in the same sized, similarly packaged containers as plaintiff's product. For the court's purposes, the products are essentially identical. They are both marketed as horse feed supplements to improve the health of horses' hooves. These products are aimed at the identical customers. As such, the degree of similarity between the two marks necessary to support a conclusion of likely confusion declines. *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874 (Fed. Cir. 1992). As applied to essentially identical goods, the two names engender similar overall commercial impression. Both marks begin with "Farrier's", followed by terms which both start with the same letter, and convey similar meanings. In other words, both marks convey the idea that the nutritional supplement consists of ingredients considered important by farriers.

The defendant argues that "like Farnham, Life Data and other companies display their house brand prominently on labels and advertising thereby eliminating any possibility of confusion." Defendant's memorandum at 9; Harrison declaration at ¶ 13(g). However, an examination of the respective labels and advertisements reveals that the term "Farnam" is

---

[11]The defendant argues that the "only common feature in the descriptive names used by Life Data and Farnam is the word 'Farrier's'. It is natural for anyone offering products used by farriers to use that word." Defendant's memorandum at 24. This court finds the alliteration in the two names, the identical term in the two names, and the inherent suggestion that Farrier's Finest is an improvement upon Farrier's Formula by the same company to include much more commonality than the defendant argues. Similarly, the court again points out that neither product is intended for use by farrier's in the shoeing process.

either minute or well hidden among statements concerning the "new" and "improved" product "Farrier's Finest". *See e.g.* plaintiff's exhibits 1 and 2 and attachments J, K and L to declaration of Dr. Gravlee.

Clearly plaintiff's mark is well known in this particular market, as the evidence submitted by the plaintiff in support of its allegations that defendant chose the mark to trade on plaintiff's good will and to cause confusion shows. *See e.g.*, plaintiff's exhibit 14 ("Per your request, all names start with the word *Farrier's,* to directly compete with Farrier's Formula"). The documents reveal that the defendant intentionally selected a name similar to plaintiff's with the idea of appropriating the plaintiff's business based on the plaintiff's mark being well-known amongst its purchasers. *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1542 (11th Cir. 1986) ("When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public").

Indeed, the defendant's market research submitted to this court demonstrates that plaintiff's mark was the one most recognized by this particular consumer market. In independent research funded by defendant, plaintiff's product was found to be used by almost thirty percent of the horse owners who use a hoof dietary supplement. Plaintiff's exhibit 13.[12] Twenty five percent of those horse owners who used a supplement stated that the reason they selected a particular brand was the recommendation of their farrier of a

---

[12]Said exhibit also shows that no other hoof dietary supplement came even close to that percentage of market share.

particular product. Twenty percent responded that they selected a particular brand based on ingredients and eighteen percent relied on their veterinarian's recommendation. *Id.* Seventy-nine percent of those surveyed were either somewhat satisfied or very satisfied with their current hoof supplement brand. *Id.*

However, given a description of a prospective product, the defendant's researchers found that "[o]f those who used Farrier's Formula most frequently in the last two years, 88% are *very* or *somewhat likely* to purchase the proposed new hoof supplement (emphasis in original)." *Id.* In its "Executive Summary of Marketing Plan," the defendant states that "Life Data, Inc., introduced a new hoof supplement, Farrier's Formula. They invested a tremendous amount of research to support the efficacy of their product; they built their brand by obtaining the farrier's and the veterinarian's endorsement and support. Farrier's Formula's reputation and positive word of mouth have propelled it to an esteemed and trusted position as the product of choice to correct and maintain proper hoof health and condition." Plaintiff's exhibit 15. That same document notes that "It is still too early to determine if the consumer is accepting these alternative brands or if they are still looking for and buying the established Farrier's Formula," and "[i]t will be important for us to have clinical studies to support our product's superiority as soon as possible to cement our claim [of superiority to Farrier's Formula]. We are targeting existing Farrier's Formula customers as well as customers not currently using a product of this type. We will be on the shelf in the

14

same size buckets with the same serving size as Farrier's Formula, but with a lower retail price."

Given the defendant's own documents, the court finds the defendant's allegation that it chose the name "Farrier's Finest" in good faith to be dubious, at best. *See* defendant's memorandum at 25.

### Evidence of Confusion

Advertising by the defendant actually uses the plaintiff's name in a direct comparison of the two. The evidence before this court demonstrates that the defendant intentionally chose a name similar to the plaintiffs and began marketing this product with the intention of taking of a substantial market share from the plaintiff. *See* declaration of Doug Butler, submitted as plaintiff's exhibit 5. Apparently, comparative advertisement is likely to increase the confusion between the two products. *See* declaration of Dr. Warren Martin, submitted as plaintiff's exhibit 10 ("The association of the brands combined with the similar names will cause some people to be unable to tell them apart, and even think that they are made by the same company .... Farrier's Finest will benefit from such associations to the detriment of Farrier's Formula®. It will be difficult to undo the damage done by the similarity of the names and comparative advertising").

The defendant was on notice of the possibility of confusion as demonstrated by the evidence it submitted to this court. For example, in exhibit A to the declaration of Jodi Arlen, documents from the Patent and Trademark Office reveal that the "only outstanding

matter is the refusal to register the mark FARRIER'S FORMULA on the ground that it is confusingly similar to the mark FARRIER'S CHOICE...."

The plaintiff has also submitted evidence of actual confusion between the two products.[13] *See* attachment M to declaration of Dr. Gravlee; plaintiff's exhibit 16; declaration of Michael S. DeLeonardo, plaintiff's exhibit 6. Although a showing of actual confusion is not necessary for the plaintiff to establish a likelihood of success on the merits, the court notes that actual confusion strongly supports the requirement of a likelihood of confusion occurring. The plaintiff alleges that since September, (when the defendant began marketing its product), the plaintiff has received "numerous" calls from people looking for Farrier's Finest and that these people assume plaintiff makes both products. Declaration of Linda Gravlee at ¶ 3, plaintiff's exhibit 16; declaration of Dr. Gravlee at ¶¶ 21, 23; attachments M and N to Dr. Gravlee's declaration; declaration of Doreen Skarda, plaintiff's exhibit 4; declaration of Daca Thomas, plaintiff's exhibit 8; declaration of Hanni Christensen, plaintiff's exhibit 9. Once the plaintiff establishes a likelihood of confusion between its own mark and that being used by the defendant, courts may presume that the plaintiff will suffer

---

[13]The court notes that the logical assumption is that Farrier's Finest is an improved formulation of Farrier's Formula, manufactured by the maker of Farrier's Formula. *See* declaration of Frank Gravlee at ¶ 21. The court also notes that "Farnam" was placed in extremely small print on the label created by defendant. The two products come in identically sized containers, both white plastic buckets with handles and green writing.

Plaintiffs allege customer confusion between the two products is already evident and that consumers have concluded that the defendant's product is manufactured by the plaintiff as a "new and improved" version of Farrier's Formula.. Clearly, this is what defendant strove to achieve in its marketing plan. See e.g Exhibit 15 to plaintiff's supplemental exhibits, ("Conduct and publish scientific studies to prove that Farrier's Finest to be superior to Farrier's Formula."

16

irreparable harm if injunctive relief is not granted. *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985).

The defendant claims that its choosing the mark in good faith shows that the plaintiff can not prove a likelihood of confusion. Defendant's memorandum at 26. The defendant further alleges that the plaintiff's valid registration does not entitle the plaintiff to prevent the defendant from using "Farrier's Formula" in good faith. *Id.* The defendant provides no credible support for its argument that it may use validly registered trademarks of others on its own products as long as it does so in good faith. The defendant does cite 15 U.S.C. § 1115(b)(4), however, that section states that:

> To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark ... and of the registrant's exclusive right to use the registered mark in commerce.... Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 1114 of this title, and shall be subject to the following defenses or defects:
>
> > (4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business ... or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin....

15 U.S.C. § 1115(b)(4). The court finds no support for the defendant's argument here.[14]

---

[14]This court notes again that a descriptive term for this product would be something such as "horse hoof feed supplement." No matter how many times the defendant argues otherwise, this court is not going to rule that "hoof" and "farrier" are synonyms.

### False Advertising

The plaintiff also alleges that it is likely to prevail on its false advertising claims. To succeed on this claim, the plaintiff must show (1) the defendant made a false representation of fact about its own or another product in commercial advertising; (2) the statements actually deceived or has a tendency to deceive a substantial segment of the audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter commerce; and (5) the plaintiff has been or is likely to be injured. 15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997); *United Industries v. Clorox*, 140 F.3d 1175, 1179 (8th Cir. 1998). *BellSouth Advertising & Publishing Corp. v. Lambert Publishing*, 45 F. Supp.2d 1316, 1320 (S.D.Ala.1999).

If there is evidence on an intention to deceive, evidence of consumer impact is not essential. However, without willful intent, the plaintiff must show evidence of consumer impact. *Clorox*, 140 F.3d at 1183. "At the preliminary injunction stage, full blown consumer surveys or market research are not an absolute prerequisite and expert testimony or other evidence may at times be sufficient to obtain preliminary injunctive relief in cases involving implicitly false or misleading claims." *Clorox*, 140 F.3d at 1183; citing *Abbott Labs v. Mead Johnson*, 971 F.2d 6, 15 (7th Cir. 1992).

The defendant's advertisements in question state that the defendant's product is "[b]ased on extensive research ... to provide optimum nutrition for healthy hooves." Exhibit

2 to plaintiff's memorandum. The plaintiff alleges that the comparative chart used by the defendant to explain why it makes a better product is false in its claim that the plaintiff's product does not contain calcium or lysine and also false in its claim that three times the amount of biotin in plaintiff's product improves hoof walls and therefore the plaintiff's product does not improve hoof walls. Plaintiff's exhibits 1 and 2. The defendant's advertisements also state that its product produces results which it "guarantees," however, plaintiff alleges that the defendant is unable to substantiate these claims. Declaration of Dr. Gravlee at ¶ 25.

Where an advertising claim is shown to be literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public. *BellSouth Advertising & Publishing Corp.*, 45 F.Supp.2d at 1320; *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2nd Cir.1982). Similarly, where the plaintiff establishes that the defendant has intentionally set out to deceive the public and the defendant's deliberate conduct in this regard is egregious, the presumption arises that the public is indeed being deceived. *Johnson & Johnson Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2nd Cir.1992).

Sufficient evidence has been placed before this court that the plaintiff is suffering irreparable harm to its reputation from the defendant's advertisements which include false

or misleading data about the contents of plaintiff's product.[15]  Much of the evidence before

this court is scientific in nature and concerns whether a particular ingredient is beneficial to

a horse's hooves and if so, what quantity of that ingredient is necessary to achieve that

benefit.[16]  While the court recognizes that these are subjects open to debate, the court does

find the defendant's comparison charts to be false and misleading to the extent that they

allege the plaintiff's product is wholly lacking in ingredients which are contained in

plaintiff's formula.[17]  *See* declaration of Dr. Gravlee at ¶¶ 26-33; declaration of Dr. Butler

at 2; declaration of Dr. Kempson at 3.   Additionally, the plaintiff has submitted evidence

tending to show that the defendant's claim of ingredients includes at least one item which

does not exist.  Declaration of Dr. Butler at 2.

The defendant argues that its claims are literally true, in that the advertisements in

question state that the plaintiff's product contains no "added" calcium or "added" protein.

---

[15]The defendant argued at the hearing that plaintiff's position is contradictory in that the plaintiff claims both trademark infringement by the defendant copying the plaintiff's mark and false advertising by the defendant misleading the consumer about the content of the plaintiff's product.  The court does not find these separate claims to be contradictory.

[16]For example, Dr. Susan A. Kempson states that the "advertisement comparing 'Farrier's Finest' and 'Farrier's Formula" is highly misleading and, quite frankly, a disgrace.  The advertisement is misleading.  The major problems are as follows ..."  Declaration of Dr. Kempson, exhibit 7 to plaintiff's memorandum.

[17]For example, an article discussing the amounts of supplements necessary in a horse's diet for a beneficial effect to be visible on the horse's hooves, states that clinical reports indication increased levels of biotin may help hoof problems but also states that such benefits have not been documented and that research showing that the additional biotin amounts is not beneficial to large numbers of horses with hoof problems abounds.  The court in no way intends to enter findings on what supplements are necessary to a horse's hooves health.  Compare attachments G to declaration of Frank Gravlee articles, (revealing a dispute on necessity of biotin supplement) and declaration of Dr. Kempson, exhibit 7 to plaintiff's memorandum.  Rather, this court shall only consider whether the supplements claimed as missing from the plaintiff's product are actually not in the same.

Apparently, the defendant does not dispute that the plaintiff's product contains these ingredients. *See* defendant's memorandum at 14; declaration of Dr. Wilson at ¶¶ 10, 13. The court finds that the distinction between "added" nutrients to the supplement and nutrients in the supplement through other ingredients is minuscule, confusing and generally lost on the consuming public. Claims which are literally true or ambiguous but which implicitly contain a false impression, are misleading in context, or likely to deceive consumers violate the Lanham Act. *BellSouth Advertising & Publishing*, 45 F.Supp.2d. at 1322.

The defendant argues that the plaintiff's failure to list specific nutrients as part of its "guaranteed analysis" in its packaging means that the defendant's ads are truthful. Defendant's memorandum at 27. However, the ad itself does not state that these ingredients are or are not included in "guaranteed analysis" labels, rather, the ad states that the ingredient or nutrient is not contained in the plaintiff's product.[18]  *See* Exhibit 3, attachment K to plaintiff's memorandum. Nowhere in the ad does defendant state that this is taken from the plaintiff's "guaranteed analysis" label on the product, rather, it states that nutritional studies have found the plaintiff's product to not contain *any* of specified nutrients. *See* declaration of Harrison at ¶ 17. This is factually untrue.

The court finds the ads, at a minimum, deceptive and more likely, literally false as a factual matter. Although both parties argue that their product is better, which product is

---

[18]The advertisement actually reads "Nutritional studies show Farnam's Farrier's Finest Offers More" and then lists in columns "Ingredient," "Benefit," "Farrier's Finest" and "Farrier's Formula."

actually the more "complete" or superior product is not an issue before this court. Which nutrients are necessary to healthy hooves is also not before this court. Only the questions of trademark infringement, false advertising and other related issues are before this court. In consideration of this, the court finds the defendant's advertisements to be false and deceptive.

### Irreparable Injury to Each Party

The court further finds that the plaintiff has built its reputation and the goodwill of the business over many years. These are in jeopardy from the defendant's current advertising and trademark infringement. As such, this court has no trouble finding that any injury to the defendant in changing the packaging of its product or the advertisements for its product is substantially outweighed by the threat to the plaintiff's goodwill and reputation it has worked so carefully to build.

The court is cognizant that the defendant has spent money in significant quantities in the past several months to launch its new product and that the defendant will be injured from the issuance of a preliminary injunction preventing the advertisements from continuing. Defendant's memorandum at 17. Defendant alleges this amount to be approximately $450,000.00. Declaration of Harrison at ¶ 20. However, the court finds that the defendant has intentionally tried to capitalize on the plaintiff's hard earned reputation. Further, apparent from the evidence before this court is that the defendant knew that the plaintiff had been using the name "Farrier's Formula" for more than fifteen years. Additionally, through diligence, the defendant could have learned that the plaintiff had applied for trademark

22

protection for its product in August, 1994. *See* Arlen declaration, exhibit A to defendant's memorandum; Harrison declaration at ¶ 13 (stating "at the time of my search, Life Data did not have a federal registration").

The court finds that deceptive advertising is not in the public's interest. While competition between products is in the public interest, this competition must be fair. The court concludes that the public is served by the defendant using truthful advertisements and marketing its product under a name that the consuming public does not associate with plaintiff's company.

### Validity of Plaintiff's Mark

The defendant argues that the plaintiff's trademark is invalid. Defendant's memorandum at 10. The defendant states that the plaintiff described its product solely as a nutritional supplement and that this is somehow false. Defendant's memorandum at 22. The court finds that this issue is not before the court at this time. The defendant's claim that the trademark registration is invalid is relevant to the court's consideration of the plaintiff's motion for temporary injunction because, if the mark's registration is invalid, the plaintiff would have no right to protect the same through a preliminary injunction. However, for purposes of this motion, the court finds that the plaintiff has submitted sufficient evidence to demonstrate that it lawfully obtained its registration.[19]

---

[19]Furthermore, the defendant's argument that the plaintiff deceived the trademark office and that the trademark registration would not have issued if the plaintiff had not made materially false statements to obtain the same is contrary to the evidence before this court. *See* defendant's memorandum at 22. The evidence demonstrates that the trademark office was aware of the exact

The defendant has cited no law to the court that a "nutritional supplement" and a "nutritional supplement designed to promote healthy hooves" are so distinct in nature from each other that the registration should not have issued. Unlike the examples that defendant cites for why "farrier's" is not a registerable term, the plaintiff's is not a product applied directly to hooves. *See* defendant's memorandum at 10. Furthermore, the president of the defendant's Horse Division refers to the plaintiff's product as a "feed supplement product" and "food supplement" and "horse hoof feed supplement."[20] Declaration of Blomquist at ¶ 7. *See also* declaration of Harrison at ¶ 9. *See also* exhibit B to declaration of Harrison (stating under "'Product Description:' Horse Supplement: strengthens hooves, works better than Farrier's Formula"); and exhibit D to declaration of Harrison ("The Hoof and Anvil logo was selected because it immediately identifies the product as a hoof supplement, which did not appear in the subheading, 'Pelleted Feed Supplement for All Horses'").

---

nature of the plaintiff's product when it issued its decision canceling the trademark registration for "Farrier's Choice." In that decision, the Trademark Trial and Appeal Board stated "Petitioner's nutritional supplements for animals and respondents nutritional additives for livestock feed are for purposes of our legal analysis, essentially identical. In point of fact, ***both products are intended specifically to improve the health of equine hoofs*** (emphasis added)." Memorandum opinion of TTAB, submitted as exhibit 12 to plaintiff's supplemental exhibits at 3. As such, defendant's claim of fraud by the plaintiff in obtaining its trademark registration can only have been made in bad faith as clear evidence establishes that the TTAB was aware of the purpose of the product. See defendant's brief at 22 ("Although it was obligated to disclose the fact that its product is intended to strengthen the hooves of horses, Life Data disingenuously described its product as only a nutritional supplement").

[20]The only person(s) calling Farrier's Formula a product used by farrier's in shoeing horses seems to be defendant's attorney(s).

24

## Conclusion

The court having considered all of the evidence, memoranda and arguments of the parties, the court finds that the plaintiff has shown a substantial likelihood of prevailing on the merits of each of its claims, a substantial threat of irreparable injury if the injunction does not issue, that the injury to the plaintiff outweighs any injury to the defendant caused by the injunction and that public policy with be promoted by the issuance of the injunction.

It is therefore **ORDERED** by the court that said motion for preliminary injunction be and hereby is **GRANTED**. The defendant is **ORDERED** to withdraw and cease running all of the advertisements with comparisons to the plaintiff's product. The **DEFENDANT** is further **ORDERED** to cease use of the name "Farrier's Finest" on its product labels pending the outcome of this litigation.

The plaintiff is **ORDERED** to post a bond in the amount of $50,000.00 dollars pending the outcome of this litigation.

**DONE** and **ORDERED** this the ___/5___ day of <u>December</u>, 1999.


UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON

25